1  ASPELIN & BRIDGMAN, LLP
   JOHN ASPELIN, ESQ. S.B. #56477
2  220 Montgomery Street, Suite 1009
   San Francisco, California, 94104
3  OFC: (415) 296-9812
   FAX: (415) 296-9814
4
5  Attorneys for Judgment Creditor
   UNIVERSAL TRADING & INVESTMENT Co.
6
7
8              UNITED STATES DISTRICT COURT
9  FOR NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)
10

| | |
|---|---|
| 11 IN RE UNIVERSAL TRADING & INVESTMENT COMPANY, | Docket No. CV 08 3632 |
| 12 | VERIFIED COMPLAINT |
| 13 Judgment Creditor | FOR JUDGMENT CREDITOR'S REMEDIES TO SATISFY REGISTERED MONEY JUDGMENT |
| 14 REGISTERED JUDGMENT FROM ANOTHER DISTRICT | |
| 15 | |
| 16 UNIVERSAL TRADING & INVESTMENT Co., | 1. JUDGMENT DEBT RECOVERY; 2. FRAUD AND MISREPRESENTATIONS; 3. CONVERSION; |
| 17 | 4. UNJUST ENRICHMENT; |
| 18 Plaintiff and Judgment Creditor | 5. PIERCING CORPORATE VEIL, ALTER EGO, LIABILITY OF GENERAL |
| 19 v. | PARTNER; 6. CIVIL CONSPIRACY; |
| 20 DUGSBERY, INC.; PAVLO I. LAZARENKO; | 7. FRAUDULENT CONVEYANCES; 8. ACCOUNTING; |
| 21 LADY LAKE INVESTMENT, CORP.; ORBY INTERNATIONAL, LTD.; | 9. DECLARATORY JUDGMENT |
| 22 UNITED ENERGY SYSTEMS OF UKRAINE, PFG; | DEMAND FOR JURY TRIAL |
| 23 TRUSTEES FOR PAVLO I. LAZARENKO, and DOES from 1 to 100, | |
| 24 | |
| 25 Defendants | |
| 26 | |

27                    I.  Subject Matter and Parties

28     1.   This Verified Complaint is for collection on the judgment debt, arising from the federal

1  judgment for money, made by the U.S. District Court for the District of Massachusetts on July7,

2  2005, and registered in this U.S. District Court under 28 U.S.C. §1963. (see Annex for a certified

3  copy of the Judgment on file in this Court).

4      2.   Judgment Creditor and Plaintiff is Universal Trading & Investment Co., Inc. ("UTICo"),

5  a corporation organized under the laws of the State of Massachusetts in 1993, with its principal place

6  of business in Massachusetts.

7      Each of the Defendants named herein is an agent and/or employee, insider, general partner,

8  or affiliate of each of the remaining Defendants and Judgment Debtor, United Energy Systems of

9

10  Ukraine ("UESU") .[1]

11      Each of the Defendants acted within the course and scope of their status as agent, and/or

12  employee, insider, general partner or affiliate of each of the remaining Defendants.

13      a.   Defendants Who Have Admitted Interest in Claimed Assets

14      3.   Defendant Pavlo Ivanovich Lazarenko, aka Pavlo Lazarenko, aka Pavel Lazarenko

15  ("Lazarenko") has admitted having an interest in certain assets claimed for satisfaction of the

16  judgment debt.  Lazarenko has held a *de facto* 50% interest in UESU, its proceeds and assets.

17  Lazarenko has been, and has acted as, a general partner of UESU, as well as an insider and/or

18  affiliate.  Lazarenko is a convicted felon, whose last known place of abode was a federal institution

19  at 5701 8th Street, Camp Parks, Dublin, CA, 94568.  Currently, Lazarenko is on bail under house

20  arrest in San Francisco pending appeal from his conviction by jury in this Court of 14 felony Counts

21  and a sentence of 105 months.  Lazarenko was also convicted of money laundering in Switzerland

22

23  and is wanted on charges in two more countries.

24      4.   Defendant Dugsbery, Inc., aka Dugsberry, Inc. ("Dugsbery") has admitted  having an

25  interest in certain assets claimed for satisfying the judgment debt.  Dugsbery is a corporation

26

27      [1] The terms used herein are consistent with the definitions found in 11 U.S.C. Section

28  101(2) "*affiliate*" and (31) "*insider*".

---

Verified Complaint for Collection on the Judgment Debt upon Registered Judgment, CA.N.D.   2

1   organized under the laws of California, with a current registered agent's address at: 364 Bolling Cir.,

2   Novato, CA, 94949. Lazarenko and Dugsbery are *alter egos* of each other. It was incorporated in

3   1994 as a shell entity and acquired by Lazarenko for $1,000 in 1997. It was later capitalized with

4   UESU's proceeds. Dugsbery was suspended by California from October 2001 to February of 2007.

5   At various times, Dugsbery has been a subsidiary of Lady Lake Investment, Corp. and Orby

6   International, Ltd., see ¶¶5-6 below.

7        b.       Defendants Who Have Not Asserted an Interest in Claimed Assets

8   5.    Defendant Lady Lake Investment Corp. ("Lady Lake") is a nominee company initially

9   incorporated in Antigua, IBC No. 9552, on July 10, 1997 at: 60 Nevis Street, St. John's, Antigua.

10  Lady Lake was dissolved (thereby losing the power to hold assets) on March 9, 2000 and then

11  revived on October 18, 2006, at a new registered agent's address: Hugh Marshall Chambers, Factory

12  St., St. John's, Antigua. Stock in Lady Lake has been in bearer form. Lady Lake was capitalized

13  with proceeds from UESU, and/or UESU's insiders and/or affiliates. Lady Lake has been used by

14  Lazarenko, to maintain and conceal the assets converted and fraudulently transferred from UESU.

15  Particularly, Lady Lake has had control over the California real estate nominally held by Dugsbery.

16  Lady Lake is subject to the jurisdiction of this Court because of its being parent of Dugsbery and its

17  holding control over certain realty in Marin County and Dugsbery's other assets.

18

19  6.    Defendant Orby International Ltd. ("Orby") is a nominee company incorporated in the

20  British Virgin Islands ("BVI") on August 12, 1997, as IBC No. 243947, at: Pasea Estate, Road

21  Town, Tortola, BVI. UESU's insider Lazarenko has beneficially owned or controlled Orby and used

22  it for holding UESU's assets. Orby has also had its stock in bearer form. Orby is an affiliate of

23  UESU, and/or *alter ego* of UESU's insider Lazarenko. Orby is subject to the jurisdiction of this

24  Court because of its participation in concealment and fraudulent transfers, which are the subject of

25  this debt collection action.

26

27  7.    Defendant United Energy Systems of Ukraine PFG ("UESU") is (or has been) a

28  corporation organized in November of 1995 under the laws of Ukraine. Its last known address is at:

Verified Complaint for Collection on the Judgment Debt upon Registered Judgment, CA.N.D.   3

11/8 Batumskaya St., Dnepropetrovsk, Ukraine. Although UESU is not actively engaged in business at this time, its has been listed as an active party in various cases being litigated in Ukraine. Judgment Creditor has repeatedly notified UESU of the collection proceedings, but UESU has not appeared. As evidence shows, Lazarenko acted with UESU as in a 50/50 secret partnership, claiming 50% of its proceeds. Lazarenko made UESU judgment-proof and converted over $240 million in UESU assets. Insider Lazarenko has engaged in numerous fraudulent transfers of UESU assets. Ownership claims to UESU's assets are concealed through the use of offshore bearer shares.

8.   Defendants "Trustees for Lazarenko" are the trustees of at least two revocable trusts, Balford Trust and Iceman Trust, for which Lazarenko has been a settlor and/or beneficiary. Balford Trust, on information and belief, has been operated by bankers affiliated with Credit Suisse (Guernsey), Ltd., and has been holding assets through a nominee entity Samante Ltd., incorporated in Isle of Man. Of those assets, more than $150 million is held in Guernsey, the Channel Islands. Other identified Trustees have been Bonnant Wurzelel LLP in Geneva, Switzerland. Judgment Creditor has notified or will notify all known Trustees, as well as any and all possible Defendants that may or may not have interest in the relevant assets, at this time named Does from 1 to 100.

## II.   Jurisdiction

9.   This Court has jurisdiction under 28 U.S.C. §1963. Under the laws of California, the judgment creditor's suit is governed by the statute of limitation of 10 years from the date of the judgment. Cal.Civ.Proc. §§337.5.

10.   This Court has subject matter jurisdiction over the parties because of the diversity of citizenship pursuant to 28 U.S.C. §1332. The claim exceeds $75,000, the statutory minimum.

11.   This Court has jurisdiction because a part of the assets claimed for satisfying the judgment debt is located in this District, including, but not limited to, the realty held in the name of Dugsbery at 100 Obertz Ln., Novato, CA, and certain funds on the accounts at Bank of America Investment. This Court has jurisdiction to adjudicate claims, undoing certain fraudulent transfers under the laws of jurisdictions other than California because Lazarenko is found in this District. Lazarenko is the

1    beneficiary of these fraudulent transfers and is the insider and/or affiliate of Judgment Debtor UESU.

2    and of the other named Defendants.

3                          III. Underlying Action and Accrual of Judgment Debt

4                                (a) Adjudication in District of Massachusetts

5        12.     The judgment of July 7, 2005 resulted from the action *UESU v. UTICo.*, Docket

6    97cv12180, litigated for about 7 years and 9 months.  It followed UESU's failure to respond to

7    discovery and refusal to go to trial on UTICo's counterclaims.  UESU's default was finally entered

8    on February 22, 2005. After the Court assessed damages, the judgment was issued for $18,344,480.

9

10       13.     The action *UESU v. UTICo,* Docket No. 12180, was filed by UESU in the U.S. District

11   Court for the District of Massachusetts in September of 1997.  UESU engaged in natural gas

12   distribution in Eastern Europe and was controlled by several co-conspirators, including the then

13   Ukrainian official Lazarenko, who secretly held a 50% interest in it.  Those co-conspirators organized

14   massive fraudulent transfers involving Lazarenko, its insider and/or affiliate, to dissipate UESU's

15   assets and to defraud creditors.  UESU sought, *inter alia*, injunctive relief to enjoin UTICo from

16   assisting the Government of Ukraine, pursuant to its contract with Ukraine.  UTICo's services

17   included collecting evidence and assisting in recovering assets associated with UESU worldwide (of

18   which more than $270 million was frozen).

19

20       14.     The claims of UESU, aimed at enjoining UTICo's cooperation with Ukrainian

21   authorities, were dismissed by the Court with prejudice.

22       15.     UESU's voluntary submission to the jurisdiction of the U.S. District Court allowed

23   counterclaims by UTICo, amended three times.  UTICo's counterclaims included relief under the

24   Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1961 *et seq.*

25       16.     The resulting judgment has not been satisfied.  During that litigation, UESU's assets

26   were converted, withheld and fraudulently transferred to its principals and agents, insiders and

27   affiliates. UESU is inoperative at this time and has not responded to demands to satisfy the judgment

28   debt.

17.   The aggregate amount of the fraudulently transferred proceeds of UESU is confirmed, on banking records, to exceed $240 million.  For avoiding creditors and hiding assets, certain of UESU's assets were converted by and/or for Lazarenko, UESU's insider and/or affiliate, and fraudulently transferred, including to the Northern District of California.  The control over these assets was further fraudulently transferred using offshore bearer shares, particularly in the BVI and Antigua, and by using acts of dissolution and reinstatement of the offshore entities.

18.   The judgment was registered in this Court pursuant to 28 U.S.C. §1963, "Registration of Judgments for Enforcement in Other Districts", on April 21, 2006.

19.   As Judgment Creditor, UTICo is entitled to a variety of remedies. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp*, 201 F.3d 314, 53 U.S.P.Q.2d (BNA) 1372 (4th Cir. 2000).  A registered judgment has the legal force as if it were the judgment of this Court. *Juneau Spruce v. Int. Longshoremen's & Warehousemen's Union*, 128 F. Supp. 697 (1955), *Juneau Spruce v. Int. Longshoremen's & Warehousemen's Union*, 128 F. Supp. 715, 717 (N.D.Cal.1955).

20.   In May of 2006 UTICo obtained a Judgment Lien recorded by the Secretary of State of California.  UTICo has, without success, attempted to levy on the identified assets in this District under the Uniform Fraudulent Transfers Acts, in force in both California (Cal.Civ.Code §3439) and Massachusetts) General Laws, Ch. 109A)[2].  Key witness Lazarenko, UESU's insider and/or affiliate, took the 5th Amendment privilege stonewalling discovery in UTICo's other civil proceedings.  The first time he provided very limited disclosure was at his deposition as Dugsbery's person most knowledgeable by UTICo on March 30, 2007.  He provided false answers about holdings of Dugsbery and about his own signature on orders to three banks to make certain transfers.

(b) Notice of Boston Proceedings to UESU's Insiders/Affiliates Lazarenko, Dugsbery and Others

21.   In the Boston forum, UTICo alleged the joint and several liability of UESU and Lazarenko.  UTICo claimed $12,711,490 plus other damages against Lazarenko.

---

[2] UFTA allows a judgment creditor to levy on the holders of assets that were fraudulently transferred.  After levy, the holders or other interested parties could file objections.

22.     On June 24, 1999 UTICo filed in this Court the action *UTICo v. P. Kiritchenko et al.*, Docket 99cv3073, based on UTICo's claims arising from assignment and rights accrued upon UTICo's implementing the contract with Ukraine's authorities.   The Defendants in that action included Lazarenko, Dugsbery, Lady Lake and Orby.

23.     As part of the action *UTICo v. P. Kiritchenko, et al.*, Lazarenko and Dugsbery were served through discovery, with the copies of the Summonses, Complaints, all pleadings and thousands of pages of exhibits from the Boston action *UESU v. UTICo*, 97cv12180. UTICo's Second Amended Counterclaim in Docket 97cv12180 named Lazarenko 109 times and asserted joint and several liability for Lazarenko as UESU's principal and *alter ego*.   Lazarenko, Dugsbery and his other *alter egos* were fully aware of UTICo's counterclaims prosecuted in the District of Massachusetts.

24.   Lazarenko chose not to appear because of the discovery in Massachusetts and the criminal proceedings unfolding in Switzerland, in the U.S., Ukraine, and Antigua.   As mentioned above, Dugsbery was suspended by California from October 2001 to February of 2007 for refusing to file its holdings and was incapable to participate.   These reasons for Defendants' electing not to appear in the District of Massachusetts action were not benign.

(c)  Relevant Proceedings Domestically and Internationally

25.   Lazarenko's first arrest took place in Switzerland in December of 1998, while he was traveling on a Panamanian passport.   He was charged with money laundering and released on bail. Later, upon the criminal trial verdict in Switzerland on a plea bargain in his *absentia*, in June of 2000 Lazarenko was convicted of money laundering.   Lazarenko was sentenced to 18 months of imprisonment and forfeited $6,552,363 held in Geneva on frozen accounts.

26.   In February of 1999, after absconding and being declared wanted by Ukraine, Lazarenko was detained in New York.   While held on the Swiss Extradition Warrant in the federal prison in California, in May of 2000 Lazarenko was indicted of 53 counts of felonies committed in the U.S. He was held without bail until 2003.   After a 5-week jury trial, on June 3, 2004, Lazarenko was convicted by a federal jury of money laundering, wire fraud and interstate transportation of stolen

property in violation of 18 U.S.C. §§1956, 1343, 1346 and 2314. Lazarenko's final conviction includes 14 Counts.

27.     There were also criminal proceedings in this Court relating to Lazarenko's former assistant Petro Kiritchenko ("Kiritchenko"), also convicted on a plea bargain in Switzerland. Kiritchenko also plea bargained in *U.S. v. P. Kiritchenko*, Docket 00cr270, in this Court. That case is still under seal. Kiritchenko laundered money for Lazarenko, including transferring for him more than $200 million in UESU proceeds, without any contracts. Kiritchenko and Lazarenko also acquired from July of 1997 to January of 1998 a 86% stake in an offshore Eurofed bank ("Eurofed"), incorporated in Antigua and Barbuda. They used Eurofed's correspondent accounts in Switzerland, the U.S. and elsewhere for fraudulent transfers involving UESU's assets.

28.     Judgment Creditor incorporates herein by reference Lazarenko's convictions and verdicts in Switzerland (#P/2489, 2000) and in the U.S. (#00cr284, 2004)  Those judgments establish *res judicata*, support collateral estoppel and issue preclusion against Lazarenko.  The testimony given by Lazarenko to the Swiss authorities as a part of a plea bargain establishes admissions and collateral estoppel against Lazarenko.  Additionally, Lazarenko has been charged with  money laundering in Antigua (2000) and with misappropriation, money laundering and contract murders in Ukraine (2001, copies of charges published).  His assets are subject to forfeiture proceedings in several jurisdictions, and he is wanted by Interpol.

## IV.  Facts Common to All Counts of Relief

### (a)  Lazarenko as Organizer, Insider, Partner and Interest Holder in UESU

29.     In September of 1995 Lazarenko, a civil servant in Ukraine all his career, became First Deputy Prime Minister of Ukraine.  His responsibilities  included securing energy commodities' supplies in Ukraine, which were mostly imported from Russia.  On November 8, 1995 Lazarenko wrote to Russian authorities proposing that a newly founded company UESU become an intermediary for natural gas imports from Russia.

30.     On November 24, 1995 Lazarenko, with several other Ukrainian nationals, arranged

for the creation of UESU as a private company, which Lazarenko secretly controlled. Lazarenko held a 50% interest that he created and controlled without corporate formalities. UESU and Lazarenko operated as a general partnership, whereas insider Lazarenko directed 50% of UESU's assets under his control, using fraudulent transfers through an elaborate series of foreign holdings.

31.    In December of 1995 Lazarenko used his position as First Deputy Prime Minister to have UESU licensed in Ukraine as the sole distributor of natural gas to three largest regions in that country. Enterprises were obligated to purchase the imported natural gas from UESU. Lazarenko, who became Prime Minister in May of 1996, also arranged for the government guarantee for $200 million per month to the Russian exporters of the natural gas -- in the event of UESU's default, allowing it to receive huge amounts of natural gas.

32.    UESU rapidly became an enormous entity generating over $11 billion in turnover in 1996, its first year of operation. As banking records show, hundreds of millions of dollars of proceeds generated by UESU were secretly distributed to Lazarenko without corporate formalities, using offshore holdings and involving offshore nominees' stock in a bearer form.

33.    UESU was made a subsidiary of United Energy International, Inc., London, U.K. ("UEIL"). UEIL was established as a shell company in October of 1995. It was set up under the control of Somolli Enterprises Ltd. ("Somolli"), incorporated by UESU's operators in Cyprus to layer secret holdings. UEIL nominally held 85 percent of UESU. UEIL employed a sole director to transfer UESU proceeds on the orders given by offshore Somolli. That arrangement was a sham, to cover Lazarenko's 50% interest in UESU and an *ad hoc* partnership.

34.    To handicap creditors making claims, ninety percent of the stock in UEIL has been owned, since December 1996, by Bassington Ltd. ("Bassington"), a shell BVI company IBC No. 203394, at the agent office of Mossack and Fonseca in the BVI.

35.    The stock of Bassington and the assets it represented have been controlled, since August 1997, through Balford Trust, Iceman Trust and other offshore trust mechanisms. Lazarenko has claimed to be the settlor and beneficiary of the Balford Trust and, on information and belief,

Iceman Trust. Lazarenko's ultimate interest in UESU has been 50%. He converted half of UESU proceeds to place those under his control and to protect those assets from UESU's creditors, particularly UTICo.

(b) Lazarenko's Coded Bank Accounts Used for Fraudulent Transfers of UESU Proceeds

36.    In the course of converting UESU assets, Lazarenko, its partner, insider and/or affiliate, largely used two coded accounts, named CARPO-53 and NIHPRO in Geneva, Switzerland. These accounts were used as a hub for fraudulent transfers of UESU proceeds to Lazarenko, acting in a 50/50 partnership, without any contracts and without any business purpose. At the time, when Lazarenko's salary as a government official was approximately $3,000 per year, he accumulated over $200 million of the UESU proceeds, using these two coded accounts.

37.    Lazarenko opened CARPO-53 Account (at SCS Alliance Bank in Geneva, Switzerland) in 1994, while he was the head of Dnepropetrovsk Regional Council. Until 1997 Lazarenko, as an insider/affiliate of UESU, moved approximately $126.3 million through the CARPO-53 Account, mostly UESU assets. (See tracing below, ¶¶41-65).

38.    In August 1997, shortly after being removed as Prime Minister for corruption, Lazarenko emptied the CARPO-53 Account by transferring these assets to his other accounts for further fraudulent transfers, involving mostly the UESU assets. (See ¶¶51-52).

39.    As mentioned, Lazarenko also opened Account #21678, code named NIHPRO, at Banque Populaire Suisse (the "NIHPRO Account") in Geneva in 1994. That bank later merged into Credit Suisse Bank.

40.    By 1998, Lazarenko moved approximately $129.8 million through the NIHPRO Account, mostly representing the UESU assets. (See tracing, ¶¶41-65). Out of that amount, on April 20-23, 1998, Lazarenko transferred approximately $106.9 million to account #41610 in the name Samante Ltd. as Trustees for the Balford Trust at Credit Suisse (Guernsey) Ltd., through an account at Credit Suisse First Boston in New York. In March of 2002, $100 million of these proceeds were fraudulently transferred from that account to another account, #41950, at the same bank in Guernsey.

These funds represented mostly UESU proceeds that Lazarenko obtained through a 50/50 partnership with UESU.

(c) UESU Assets' Conversion and Kickbacks to Lazarenko as Partner, Insider/Affiliate

41.   As cited above, Lazarenko utilized, in a sham arrangements, Somolli, which controlled UEIL and ultimately UESU, to funnel the improperly-obtained funds of UESU.

42.   Somolli, a shell corporation in Cyprus, was used to secure the transfer of UESU proceeds through the accounts at Bank of Cyprus to Lazarenko to match his 50% interest in UESU, as a general partner, as well as its insider and/or affiliate.

43.   Among other transactions, from April to December of 1996, Somolli transferred $87,078,369 for Lazarenko's benefit to three accounts. Those were Swiss accounts controlled by Kiritchenko: in the name of Orphin S.A. ("Orphin"), a Bahamas shell entity, and Wilnorth Inc. ("Wilnorth"), a Panamanian shell entity, and another Orphin account in Warsaw, Poland. Somolli also transferred $13,999,970, from May to June of 1997, to a third account in the name of Orphin, at Eurofed. In his turn, Kiritchenko transferred these UESU proceeds and other proceeds, without any corporate formalities or contracts, under Lazarenko's control; their specifics set forth below.

44.   From April to September of 1996, Somolli moved, in 21 wire transfers, $23,049,386 to the Orphin Account, controlled by Kiritchenko at Credit Suisse bank in Geneva. From February to October of 1996 Kiritchenko transferred $39.2 million from that Orphin Account to the NIHPRO Account under control of Lazarenko, at the same bank.

45.   From July to September of 1996 Somolli transferred $14.1 million to the Wilnorth Account, at SCS Alliance bank in Geneva. On September 18, 1996 Wilnorth transferred the $14.1 million to CARPO-5353 Account, controlled by Lazarenko, at SCS Alliance bank in Geneva.

46.   From April to August of 1996 Somolli transferred $49,929,347 to Orphin account in Warsaw, controlled by Kiritchenko. Out of these UESU proceeds, Kiritchenko forwarded, from April to May of 1996, $25.4 million to the account in the name Bainfield Co. ("Bainfield"), a shell company in the BVI, that he co-owned with Lazarenko, at SCS Alliance bank in Geneva.

47.     From February to August of 1996 Kiritchenko transferred $27.275 million from the Bainfield Account to Lazarenko's CARPO-53 Account, also at SCS Alliance bank in Geneva.

48.     From July to August of 1996 Kiritchenko transferred $15,863,000 of the UESU funds from his Orphin Account in Geneva to the account in the name of a Panamanian shell entity GHP Corp. that Lazarenko and Kiritchenko controlled, at Credit Suisse bank.

49.     From August to September of 1996 Kiritchenko transferred $11 million of UESU proceeds from the Bainfield Account to the NIHPRO Account under Lazarenko's control in Geneva. From August of 1996 to September of 1997, Kiritchenko furher transferred $60.5 million to from GHP Corp. Account at Credit Suisse in Geneva to the NIHPRO account, which included mostly the UESU's proceeds that Kiritchenko received at Orphin account at American Bank in Poland and other accounts.

50.     From May to August of 1997 Lazarenko, through Kiritchenko's Orphin, moved the UESU's proceeds of over $30 million into Eurofed's correspondent accounts at Commercial Bank and Pacific Bank in San Francisco.  On August 1, 1997 Lazarenko made two transfers for a total of $28 million from the CARPO-5353 Account, consisting of UESU proceeds, to his Eurofed's accounts at Commercial and Pacific Bank in San Francisco.

51.     On August 8, 1997 Lazarenko deposited two bearer bank checks, each for $48 million, at SCS Alliance Bank's subsidiary the Bahamas, drawn on his CARPO-53 Account.  Lazarenko did so using Kiritchenko who signed on the bank's receipt forms for $96 million for Lazarenko.  These co-conspirators also held a discussion that this was done to cut the money trail and, to avoid creditors. These withdrawals for the bearer checks' deposits essentially liquidated the CARPO-53 Account.

52.     The conversion and/or fraudulent transfers relevant to this Complaint are detailed, together with banking records, in the exhibits and Affidavits filed by UTICo in two related actions this Court and the exhibits of the Government in Lazarenko's criminal trial, Docket 00cr0284.  See also the Indictment of Lazarenko, who was indicted of 22 Counts associated with UESU (those

charges did not survive a mid-trial Rule 29 Motion in his criminal trial). Altogether, Lazarenko, as UESU's general partner 50/50, and/or insider and/or affiliate, received under his control over $240 million from UESU proceeds.

### V. Tracing UESU Proceeds to Novato Real Estate and Fraudulent Transfers of Bearer Stock

#### (a) Money Trail of $5.6 Million from UESU to Dugsbery Via SCS Alliance Bank

*UESU Fraudulent Transfers and/or Assets Conversion Step 1*

53.   As stated in ¶¶43-45, UESU fraudulently transferred $14,099,636 through Somolli account at Bank of Cyprus to the account #5451 in the name of Wilnorth (incorporated in Panama) at SCS Alliance bank, Geneva. Lazarenko had 50% of bearer shares in Wilnorth.

54.   Those wire transfers originated from UESU through its offshore *alter ego* Somolli, account #0113-41-006447(6) at Bank of Cyprus and went to Wilnorth Account at SCS Alliance Bank in Geneva. From July 31 to September 9, 1996 UESU transferred in 12 wire transactions $14,099,636 to Wilnorth Account #5451, operated by Kiritchenko at SCS Alliance bank in Geneva:

| | |
|---|---|
| July 31,1996, | $ 999,968.50 |
| August 7, 1996, | $ 999,968.50 |
| August 7, 1996, | $ 999,968.50 |
| August 7, 1996, | $ 999,968.50 |
| August 19, 1996, | $2,499,968.50 |
| August 23, 1996, | $ 999,968.50 |
| August 28, 1996, | $ 499,982.50 |
| August 29, 1996, | $ 499,968.50 |
| August 30, 1996, | $ 999,968.50 |
| September 4, 1996, | $ 2,599,968.50 |
| September 4, 1996, | $ 499,968.50 |
| September 9, 1996, | $ 1,499,968.50 |
| TOTAL: | $ 14,099,636.00 |

*UESU Fraudulent Transfers and/or Conversion Step 2.*

55.   On September 27, 1996 Kiritchenko transferred all 12 of the above wire transfers received from UESU, for $14.1 million, to Lazarenko's CARPO-53 Account at the same bank, SCS Alliance bank in Geneva.

*UESU Fraudulent Transfers and/or Conversion Step 3*

56.    On or about August 1, 1997 Lazarenko and Kiritchenko (along with other transactions to liquidate the CARPO-53 Account) acquired, as cited above, two bearer checks, each for $48 million, made by SCS Alliance bank. They deposited one of those two bearer checks in Lazarenko's account #20170 at SCS Alliance in the Bahamas, opened in the name of Lady Lake, capitalizing that entity with $48 million from UESU. Lazarenko made those arrangements in Geneva at SCS Alliance bank's main office, for cutting the money trail.

*UESU Fraudulent Transfers and/or Conversion Step 4.*

57.    On August 5, 1998 Lazarenko ordered the transfer of $5.3 million, and on August 27 $360,985, from Lady Lake Account at SCS Alliance to its subsidiary's Dugsbery Account #506-36810-9, opened by Lazarenko's agent Michael Menko ("Menko") at WestAmerica Bank in Sausalito, California.

58.    A portion of these proceeds was transferred to Robertson Stephens Investment bank in San Francisco, where about $266,000 was seized by the government in Lazarenko's criminal case.

(b) Money Trail of $4 million from UESU to Dugsbery via Eurofed

*UESU Fraudulent Transfers and/or Conversion, Step 1*

59.    From May 27 to June 11, 1997 UESU made wire transfers to Eurofed's account #151897 Orphin, controlled by Kiritchenko. The total of 11 transfers was $13,970,000 (see ¶61).[3]

60.    These transfers went to the accounts (controlled by Lazarenko) of Eurofed's correspondent account in Pacific Bank, at 351 California St., San Francisco. Those fraudulent transfers were originated from Slavyansky bank in Ukraine.

61.    Those fraudulent transfers of UESU's assets included:

May 27, 1997 -   $2,998,000
May 29, 1997 -   $1,662,000
May 30, 1999 -   $  394,000
June 2, 1997 -   $2,200,000
June 3, 1997 -   $1,530,000

---

[3] Eurofed was used as a depository of fraudulently transferred UESU assets for Lazarenko, who held about $150 million at Eurofed (at its peak), mostly from UESU

```
June 4, 1997 -   $  499,970
June 5, 1997 -   $  170,000
June 6, 1997 -   $1,000,000
June 9, 1997 -   $  510,000
June 10, 1997 -  $2,000,000
June 11, 1997 -  $1,036,000
June 12, 1997 -  $1,000,000
Total:           $13,970,000
```

*UESU Fraudulent Transfers and/or Conversion, Step 2*

62.     From July 31-September 10, 1997 the above $13.970 million of UESU's proceeds were transferred, among other proceeds, from Orphin account #151897 at Eurofed to Lazarenko's personal account #137978 at Eurofed, which bank used non-segregated correspondent accounts.

63.     On September 25, 1997 $10 million from the UESU proceeds were transferred from Eurofed account at Pacific Bank to Eurofed's investment account opened at Hambrecht Quist, at 1 Bush Street, San Francisco.  On August 5, 1998 Eurofed transferred its brokerage accounts from Hambrecht Quist to Robertson Stephens Investment, at 555 California Street, San Francisco. Altogether, more than $40 million were transferred to Robertson Stephens (later acquired by Bank of America).  Out of these proceeds, in 2005 the Government seized about $1,379,879 on acct. W71-223433; $327,317 on acct. W71-224464 and 923,000 Ukrainian bonds, all traced to UESU proceeds, controlled by UESU insider Lazarenko's nominees.

*UESU Fraudulent Transfers and/or Conversion, Step 3.*

64.     On August 11, 1998 Lazarenko used a transactions' settlement with Kiritchenko for advance deposits on Lady Lake account #132907 at Eurofed.  Kiritchenko moved $3.9 million to the Lady Lake Eurofed account from his Handa International Ltd. account and $100,000 from Clayton accounts at Eurofed.  These bridge transfers were covered six days later, on August 17, 1998, when Lazarenko transferred $39,388,625 from his Eurofed account #137978 to Lady Lake Eurofed account.  Eurofed was not allowed to hold accounts in Antigua; these UESU/Lazarenko's assets were commingled at Eurofed's six correspondent accounts at banks in the U.S., Switzerland and Lithuania.

//

*UESU Fraudulent Transfers and/or Conversion, Step 4.*

65.     On August 11, 1998 Lazarenko transferred, from Eurofed, $4.0 million held on Lady Lake account #132907 to its subsidiary's Dugsbery account #506-36810-9 at WestAmerica Bank in Sausalito, California.  For that transfer Eurofed's operators used Eurofed's correspondent account #73721 at Hermis bank in Lithuania.

### (c) Acquisition of Realty upon UESU's Fraudulent Transfers and/or Conversion

66.     As a result of the above fraudulent transfers, Dugsbery acc. #506-36810-9 at WestAmerica Bank was credited with: (a) $5.3 million on August 5, 1998 from Lady Lake acc. #20171 at SCS Bank (Bahamas); (b) $4 million on August 11, 1998, from Lady Lake account via Eurofed's acc. #73721 at Hermis bank in Lithuania;  (c) $360,985 on August 27, 1998, again, from Lady Lake account at SCS Bank (Bahamas).  The total was $9,660,985, all traced to UESU.

67.     On August 11, 1998  $30,000 was paid from Dugsbery's account at WestAmerica Bank to First American Title Co. as a deposit towards the Novato realty acquisition.

68.     On August 7 and 14  $5,250,000 and $4,000,000, respectively, were moved from Dugsbery's checking account #503-36810-8 to a sister money market account #506-36850-5 at the same bank in Sausalito.

69.     I n step five, on August 31  $6,745,000 was paid by a check from the above money market account of Dugsbery to First American Title, for the acquisition of 100 Obertz Ln, Novato. The recordation was on September 8, 1998.  Dugsbery account was liquidated; approximately $266,307, after transfer to Robertson Stephens Investment, ended on Dugsbery's investment #34-567156 (later seized by U.S. Government).

70.     Three months after that realty acquisition, as cited above, UESU's partner/insider Lazarenko, was arrested, in December of 1998, in Switzerland.  In 2000-2003, several more UESU operators were charged or declared wanted by Interpol (although their prosecution in Ukraine and Russia was later abandoned).  These arrests, charges and Interpol's "red cards" triggered subsequent fraudulent transfers of the UESU proceeds and holdings, including holdings in the name of Dugsbery,

Lady Lake, and Orby, as cited below.

    <u>(d) Fraudulent Transfers of Bearer Shares and of Interest in Realty and Accounts after</u>
<u>Lazarenko's Imprisonment. UESU Fraudulent Transfers and Conversion Steps 6-8</u>

71.    As stated elsewhere, the shares of Lady Lake, Orby and four Antiguan entities relevant here, were in a bearer's form; their actual holder and presenter was entitled to the assets they represented. That bearer stock was used by Lazarenko for purposes of conversion, concealment and fraudulent transfers of the UESU proceeds for evading criminal liability in the U.S., Switzerland, Antigua and Ukraine, and evading creditor UTICo.

72.    Lazarenko originally acquired Dugsbery from his associate Kiritchenko for $1,000 in about July of 1997. Dugsbery was a shell company without accounts, assets or business.

73.    Lady Lake was incorporated in Antigua and Barbuda on July 10, 1997. Lady Lake's stock was in a bearer's form, under its By-Laws.

74.    In July of 1997 Tamara Lazarenko ("Tamara", Lazarenko's wife at the time) and Kiritchenko traveled to Antigua and met with Eurofed's operators Johnny Johnson ("Johnson") and Vladimir Ivanov ("Ivanov"). Tamara acquired from them five Antiguan shell companies. These included Lady Lake, Nemuro Industrial Group Ltd. ("Nemuro), Fairmont Group Ltd. ("Fairmont"), Guardian Investment Group Ltd. ("Guardian") and Firstar Securities Ltd. ("Firstar"), to be used for holding UESU assets and avoiding creditors.

75.    All these 5 Antiguan entities were registered at the same address: Caribbean Management Trust Co., 60 Nevis St., St. John's. Johnson acted for Lady Lake as the director of Sentinel Directors Inc. ("Sentinel"), incorporated in the BVI as IBC No. 192068, and Sentinel, in turn, was the corporate director of Lady Lake and of the other 4 Antiguan entities, cited above.

76.    In late July of 1997 Lazarenko and Kiritchenko traveled to Switzerland. As mentioned above, the stock of Lady Lake was in a bearer form, which Lazarenko, as evidence shows, gave to his Swiss trustee Augusto Ferrari ("Ferrari") of Arnold Wehinger Kaelin Ferrari, a firm in Zurich. Lady Lake was made offshore parent of Dugsbery. Ferrari also served as one of the directors

1   of Eurofed.

2       77.      On August 4-7, 1997, Lazarenko made arrangements in Geneva (executing a "Letter

3   of Wishes") to create, as a settlor and 'protector', a revocable trust called Balford Trust, set up with

4   Credit Suisse Ltd.   On the question where Lazarenko wished to set up a nominee company, he

5   marked "Isle of Man".   In that trust, Lazarenko nominally named his 4 family members as the

6   beneficiaries of the Balford Trust.   Lazarenko was the first beneficiary and the trust was revocable,

7   so he could control it.   That trust was to be operated through Samante Ltd. (Samante), an Isle of Man

8   corporation, incorporated for on August 1, 1997.   Samante was to hold certain UESU assets, to

9   avoid creditors.

10

11      78.      After Switzerland, in August of 1997, Lazarenko and Kiritchenko went to Antigua,

12  where they met with the Eurofed operators, Johnson and Ivanov.   Lazarenko's and Kiritchenko's

13  joint acquisition of Eurofed (for $1 million for a 66.6% stake) was processed.   Their stake in

14  Eurofed's stock later, by January of 1998, was increased to 86%.

15      79.      In July of 1998 Ferrari was summonsed and questioned per Ukrainian letter rogatory,

16  by a Swiss Magistrate. Ferrari admitted providing services to Lazarenko, but denied wrongdoing.

17  After that summons, Ferrari took steps to dispose of the offshore stock he held for Lazarenko.

18      80.      As a result, another shell company, Orby, incorporated on August 12, 1997, as IBC

19  No. 243947 in the BVI, was now used for Lazarenko's and UESU's holdings.   Orby was made a

20  parent to Lady Lake, thereby controlling Dugsbery assets.   Orby also was made parent of 4 more

21  Antigua shell companies controlled by Lazarenko: Nemuro, Fairmont, Guardian and Firstar, also

22  largely holding UESU assets.   Orby also was used to hold Lazarenko's control over his stake at

23  Eurofed.

24

25      81.      Orby's directors were Shona Luise White and Kay-Linda Richardson.   They have

26  worked for Morgan & Morgan Trust Co., at Pasea estate, Main St., Tortola, the BVI, As directors,

27  they exercised control over Lady Lake.

28      82.      On or about April 7, 1998, Lazarenko instructed his bankers at Credit Suisse to use

the Balford Trust to relocate the assets originating from UESU and accumulated on coded NIHPRO account, thus transferring about $106 million on April 20-23, from Geneva to Guernsey. In the discussion with Credit Suisse bankers and insisting on the transfers offshore, Lazarenko admitted that this was to be done to hinder claims for these assets.

83.     According to Lazareko's instructions, Credit Suisse (Guernsey) Ltd. opened an account 41610 in the name of Samante Ltd. as Trustees for Balford Trust, to which the above UESU-related proceeds were transferred. Lazarenko also routed additional proceeds from accounts at Credit Suisse to said account. This brought the then balance on the 41610 account to over $143 million. All that was done to hinder the collection of claims against UESU and himself.

84.     The arrest of Lazarenko by the Swiss law enforcement in December of 1998, the charges and his release on bail of 3 million Sw. Fr., triggered further restructuring of those holdings. In January of 1999 the control over Lady Lake and its subsidiary Dusbery was moved from Switzerland to the BVI (to the above directors of Orby). Those two residents in the BVI started to exercise control and to give instructions to Eurofed on behalf of Orby and Lady Lake.

85.     Orby, as a parent to Lady Lake, was used for further fraudulent transfers for Lazarenko and UESU. An account in the name of Orby was opened at Eurofed, to which Lady Lake's dividends were transferred. An arrangement was made for Lady Lake's "guaranteed loans" from Eurofed on February 15, 1999, followed by a Custodian Agreement between Eurofed and Orby of April 17, 1999. The management of Lady Lake and Dugsbery shifted from the BVI to Antigua, i.e. to Johnson and Ivanov, acting as the directors of Sentinel, the corporate director of Lady Lake.

86.     In October of 1999 the Antiguan authorities issued injunction against Eurofed, and next month Eurofed was put into receivership in Antigua. In January of 2000 Lazarenko was charged in Antigua, *in absentia*, of money laundering. The Office of Drug and Money Laundering Control in Antigua filed civil proceedings against Lazarenko and his nominees, including Lady Lake and his 4 other Antiguan shell entities. After the criminal proceedings in Antigua were commenced, Johnson and Ivanov left Antigua.

87.     On March 9, 2000 the registered agent of Lady Lake, Caribbean Management and Trust Co., at 60 Nevis St., St. John's, Antigua, after searches by authorities, filed with Registry of Companies the "resignation of the registered office", striking Lady Lake (and other entities associated with Lazarenko) from the registered companies. That act caused Lady Lake's dissolution, incapacitation and loss of rights, under the International Business Companies Act of Antigua (of 1982), including the loss of powers to hold Dugsbery and its assets in California. On the same day, four other Antiguan entities and holders of UESU assets associated with Lazarenko were also dissolved in Antigua: Nemuro, Fairmont, Guardian and Firstar.

88.     Less than 3 months later, on May 1, 2000, Sentinel, cited above, an IBC No. 192068 in the BVI, that was the corporate director of Lady Lake, Nemuro, Fairmont, Guardian and Firstar, was also struck, from the Registry in the BVI.

89.     On March 9, but in any event not later than on May 1, 2000, all residual rights of holding the stock and the assets of Dugsbery reverted from the incapacitated Lady Lake to its parent Orby in the BVI, by operation of law. The control over Lady Lake and Dugsbery shifted from the then dissolved Sentinel, at 125 Main St., P. Box 144, Road Town, to Orby, at Pasea Estate, Road Town, Tortola. These are two different registered offshore agents in the BVI.

90.     After Lazarenko was convicted in June of 2000 in Switzerland, his Zurich-based attorneys Arnold, Kaelin, Wehinger and Ferrari resigned as his trustees, without releasing to authorities documents concerning Lazarenko's offshore holdings. By 2005, Lazarenko's files and holding instruments were transferred from Zurich to Geneva, i.e. to another Swiss law office and trustees, Bonnant Wurzelel, for complicating collection of evidence by law enforcement.

91.     Additionally, since October 1, 2001 Dugsbery was suspended by the State of California, under §23302 of the Revenue and Taxation Code. Lazarenko's agents declined to file corporate foreign ownership disclosure, on information and belief, to prevent the proper direction of the letters rogatory, initiated by the U.S. government, to Antigua, the BVI and Switzerland.

92.     The suspension of Dugsbery for refusal to disclose its holding information continued,

---

1    until after Lazarenko's sentencing in this Court in August of 2006, until February of 2007, when

2    Lazarenko was protected by the double jeopardy doctrine.

3        93.    Dugsbery's Tax Return for 2004 (filed in January of 2006), established that no later

4    than in December of 2004, the Trustees controlling Dugsbery and Lady Lake in Switzerland were

5    replaced, their location moved from Zurich to Geneva.  The new Trustees were now Marc Bonnant

6    and Dominique Wurzelei, at P.O. Box 473, at 12 rue de St.-Victor, in Geneva.  With that move, the

7    Trustees' control, through Orby in the BVI, of Lady Lake, as well as over Lazarenko's stake in

8    Eurofed, was moved to Geneva.

9

10       94.    Simultaneously, the Trustees' control over Lazarenko's other Antiguan entities Nemuro,

11   Fairmont, Guardian and Firstar, holding the assets traced to UESU, was also moved to Geneva.  That

12   represented a new fraudulent transfer, notwithstanding the existence of an injunction against such

13   holdings' transfers, which was in force in Antigua and in the U.S.

14       95.    In another transaction to hinder the creditors' claims, in about March of 2002, $100

15   million of the above proceeds in the name of Balford Trust was transferred from the above cited

16   account #41610 in the name of Samante, to account #41950, also at Credit Suisse (Guernsey) Ltd.

17       96.    On October 18, 2006 Lady Lake was reinstated in Antigua with a new registered

18   agent: Chambers of Hugh Marshall, Jr., at Factory Rd., St. John's, Antigua.  Upon Lady Lake's

19   revival, the holding powers and rights to all Dugsbery's stock and assets reverted back to Antigua,

20   by operation of law as to reinstated companies.  On the same day, Nemuro was also reinstated in

21   Antigua, by the same new agent.  That revival occurred within two months after Lazarenko's

22   sentencing in the U.S. (after he was shielded by the double jeopardy defense) and was also with a

23   fraudulent intent.

24

25       97.    After Lady Lake's revival on October 18, 2006, the holding of Dugsbery, through

26   Lady Lake, reverted from Orby in the BVI, back to Antigua.  That transfer of the holding powers and

27   rights, from Orby to Lady Lake and the previously listed transfers, *supra*, was fraudulent, because

28   that was made without consideration or corporate formalities.  The underlying intent for these

1    fraudulent transfers was to avoid filings, not to release evidence, after Lazarenko was charged of

2    money laundering in Antigua, charged and convicted in Switzerland, and in the U.S.

3        98.      Particularly, the transfers involving holding of Dugsbery through Lady Lake and Orby

4    (the fraudulent transferees of the UESU assets) and, *inter alia*, the fraudulent transfer of the control

5    of the Dugsbery assets in California, continued after the acquisition of the realty title, until at least

6    October 18, 2006.

7        99.      Summarizing the fraudulent transfers of the holdings in UESU assets, relevant to the

8    interest in the California realty title, as well as cash assets, traced to UESU, these events followed:

9

10       - *UESU Assets' Fraudulent Transfers Step 6.* In March 2000, Lady Lake (Dugsbery's parent),

11    as well as Nemuro, Fairmont, Guardian and Firstar were dissolved in Antigua, with the loss of Lady

12    Lake's power to hold the Dugsbery assets, and all residual ownership rights shifted to the dissolved

13    entities' parent--Orby in the BVI.

14       - *UESU Assets' Fraudulent Transfers, Step 7.* In 2003-2004, the Trustees' holding control

15    over Lady Lake and Dugsbery and their parent Orby (controlling also Nemuro, Fairmont, Guardian,

16    Firstar and Eurofed) was transferred between the initial Trustees to the substituting Trustees, from

17    Zurich to Geneva.

18       - *UESU Assets' Fraudulent Transfers Step 8.* On October 18, 2006 the rights and powers to

19    hold Dugsbery reverted from Orby, BVI, to Dugsbery's parent Lady Lake, revived in Antigua. On

20    that date, Nemuro was also revived, with the revival of its power to hold assets in its name.

21

22                            <u>COUNT 1. JUDGMENT DEBT RECOVERY</u>

23       100.     Judgment Creditor incorporates by reference paragraphs 1 through 99 above.

24       101.     Pursuant to 28 U.S.C. §1963, Cal.Civ.Proc. 708.210 *et seq* and other law, UTICo is

25    entitled to sue on the judgment debt. Lazarenko was in privity with UESU, held a 50% interest in

26    UESU proceeds and assets, formed an *ad hoc* general partnership, was UESU's insider and/or

27    affiliate, and he is liable for UESU's debt on the judgment.

28       102.     Acting directly and through his corporate entities, Lazarenko exercised control over

1    UESU and caused the litigation *UESU v. UTICo*, Docket 97cv 12180 be filed in Boston in 1997.

2    Knowing of the counterclaim for over $12.1 million and about a parallel complaint in *UTICo v. P.*

3    *Lazarenko,* Docket 99cv10399 in that District court, Lazarenko evaded service of process when he

4    was in a detention center in New York. Lazarenko, UESU's privy, was later served with copies of

5    all the pleadings and exhibits in the *UESU v. UTICo* case. Lazarenko knew that UTICo asserted

6    claims against him personally, for clandestinely controlling UESU, but elected not to appear.

7

8         103.    Lazarenko and his corporate entities and *alter egos* Dugsbery, Lady Lake, Orby and

9    others should be held liable on the judgment debt, subject to all possible remedies, to the full extent

10   of the law, available to Judgment Creditor, including, but not limited, to piercing corporate veil, *alter*

11   *ego* doctrine, conversion of assets, fraud, fraudulent transfers and unjust enrichment. Lazarenko

12   should also be held liable as a 50% partner of a secret *ad hoc* general partnership with UESU, and/or

13   as an insider and/or affiliate of UESU, upon fraudulent transfers and under other causes, outlined

14   herein.

15        104.    Likewise, Lazarenko's corporate nominees, *alter egos*, holders of bearer stock and

16   fraudulent transferees, including, but not limited to, Dugsbery, Lady Lake and Orby, the person or

17   persons in control of these entities, as well as other insiders and/or affiliates of UESU and its principal

18   Lazarenko, should be held liable to satisfy the judgment debt, and the Trustees for Lazarenko should

19   be ordered to pay on the judgment debt.

20

21        105.    Judgment Creditor is entitled to relief on this Count.

22              COUNT 2.  FRAUD AND MISREPRESENTATIONS

23        106.    Judgment Creditor incorporates by reference paragraphs 1 through 104 above.

24        107.    At all times relevant here, Lazarenko and his privies used fraud to render a judgment

25   uncollectible. That fraud included using clandestine and illegal agreements for Lazarenko's 50%

26   interest in UESU's proceeds and assets, creation of code-named accounts in Geneva and elsewhere,

27   using offshore entities and bearer shares in Lady Lake, Orby, as well as at least 5 more entities.

28        108.    Lazarenko, using a Panamanian passport, undertook to cut the money trail including,

---

Verified Complaint for Collection on the Judgment Debt upon Registered Judgment, CA.N.D.   23

on one occasion, the issuance of two bearer banker's checks for $48 million each. These fraudulent transactions, in various jurisdictions, were undertaken to defraud creditors, i.e. this Judgment Creditor.

109.   Additionally, at his deposition as Dugsbery's person most knowledgeable on March 30, 2007, Lazarenko made false statements, intended to hamper the collection of the judgment. Among other misrepresentations, he falsely represented that Lady Lake, parent of Dugsbery, was never dissolved, and denied the authenticity of his own signatures on documents relating to fraudulent transfers of relevant assets, all in bad faith.

110.   Judgment Creditor is entitled to relief on this Count.

## COUNT 3.   CONVERSION

111.   Judgment Creditor incorporates by reference paragraphs 1 through 110 above.

112.   Insider Lazarenko and his offshore corporate entities, cited above, have intentionally, despicably converted, misappropriated and/or embezzled funds of UESU. Judgment Creditor has demanded that Defendants make these UESU funds available for paying off the judgment debt, Defendants refused.

113.   The above-mentioned conduct in several jurisdictions was malicious, intended to cause injury, was willful and in conscious disregard for the superior rights of Judgment Creditor in the converted assets.

114.   Lazarenko's (whose official income $100- $500 a month at all relevant times) and his entities' and alter egos' title to the assets obtained from UESU is nil. Judgment Creditor, whose rights to the converted assets are superior, is entitled to relief on this Count.

## COUNT 4. UNJUST ENRICHMENT

115.   Judgment Creditor incorporate by reference paragraphs 1 through 114 above.

116.   At all times as cited above, Lazarenko's salary as a government employee in Ukraine was $100-$500 a month. All the assets from UESU, over $240 million, that he converted and/or fraudulently transferred and/or enriched himself with, do not belong to him or his shell entities and

*alter egos.* Lazarenko and his entities, cited above, should be held liable and should disgorge those assets to satisfy the judgment debt.

117.    Judgment Creditor is entitled to relief on this Count.

## COUNT 5. PIERCING CORPORATE VEIL, ALTER EGO; LIABILITY OF GENERAL PARTNER

118.    Judgment Creditor incorporates by reference paragraphs 1 through 117 above.

119.    Lazarenko disregarded corporate formalities while exercising his control over UESU's proceeds and assets. His 50% interest in UESU, with which he was an *ad hoc* general partner 50/50, was enforced through his abusing governmental powers. Lazarenko's abuse of power was undisclosed and illegal.

120.   At all times, there were no lawful contracts under which Lazarenko converted 50% of UESU's proceeds and directed the fraudulent transfers involving the offshore entities, cited above.

121.   There was also no consideration paid for the transactions involving the assets subject to the claims in this Complaint. Lazarenko used extortion, threat and compulsion deriving from his governmental offices, to defraud creditors, i.e. this Judgment Creditor.

122.    For purposes of satisfying UESU's judgment debt, UESU's corporate veil should be pierced and/or Lazarenko held as UESU's *alter ego.* Dugsbery, Lady Lake, Nemuro, Fairmont, Guardian, Firstar, and Orby should also be found *alter egos* of Lazarenko, the general partner, insider and/or affiliate of UESU, for purpose of satisfying the judgment debt.

123.    Judgment Creditor is entitled to relief on this Count.

## COUNT 6. CIVIL CONSPIRACY

124.    Judgment Creditor incorporates by reference paragraphs 1 through 123 above.

125.    Lazarenko and his privies entered into civil conspiracy, to achieve their goals of conversion, fraudulent transfers and fraud, and to defraud creditors including this Judgment Creditor. That conspiracy involved violating the laws of several jurisdictions and federal law.

126.    Judgment Creditor is entitled to relief on this Count.

## COUNT 7.  FRAUDULENT CONVEYANCES
### (not only under California law)

127.    Judgment Creditor incorporates by reference paragraphs 1 through 126 above.

128.    At all relevant times, Lazarenko and his privies used fraudulent transfers to convert UESU's proceeds and assets to his personal use and illegal benefit, *inter alia* within the meaning of California Civil Code §3439 and/or the analogues statutes and law in other jurisdictions, as applicable.

129.    The latest fraudulent relevant transfer took place and/or obligation incurred on or about October 18, 2006, as relevant to the claims herein, i.e. transfer of certain holding powers between two offshore entities in the BVI and Antigua, affecting assets in California.

130.    Prayer for relief on this Count is pled not only under the law of California, but also under the laws of other jurisdictions where fraudulent transfers were made who whose law may apply. Judgment Creditor is entitled to relief on this Count.

## COUNT 8. ACCOUNTING

131.    Judgment Creditor incorporates by reference paragraphs 1 through 130 above.

132.    Lazarenko, Dugsbery, Lady Lake, Orby and their privies, using numerous offshore accounts, trustees and bearer shares, should account for all proceeds converted and fraudulently transferred from UESU, for trust instruments, as well as for all bearer sharers used for fraudulent transfers.

133.    Pursuant to federal law, applicable to collection on federal judgments, and other law, Judgment Creditor is entitled to relief on this Count.

## COUNT 9. DECLARATORY JUDGMENT

134.    Judgment Creditor incorporates by reference paragraphs 1 through 133 above.

135.    This Court should declare that Lazarenko is in privity with, and insider and/or affiliate of, UESU.  Lazarenko, as UESU's *alter ego*, disregarded corporate formalities, may not shield himself by alleging a separate corporate existence of UESU.  Lazarenko should be declared liable on the judgment debt of UESU, including from the proceeds held in trusts, in which he has been a settlor

and beneficiary. Likewise, this Court should declare that Lazarenko's nominees and *alter egos*, including but not limited to, Dugsbery, Lady Lake, and Orby, are liable and should satisfy the judgment debt of UESU.

136. Lazarenko should also be declared liable as an *ad hoc* general partner of UESU, for purposes of collection on the judgment. The Court should also find and declare that at no time were there lawful contracts or lawful consideration for any of the fraudulent transfers of UESU proceeds, as cited above.

137. The offshore bearer stock, used for fraudulent transfers, including the bearer shares in Lady Lake and Orby, should be ordered surrendered and deposited with the Court, or, alternatively, declared nil and/or its title declared vested in UTICo, for purposes of satisfying the judgment debt.

138. Judgment Creditor is entitled to relief on this Count.

WHEREFORE, Judgment Creditor prays for the following relief:

a) To declare that Defendants Lazarenko, Dugsbery, Lady Lake and Orby (without limitation) are liable, as insiders and/or affiliates of UESU, to the Judgment Creditor for the judgment debt under the July 7, 2005 judgment, plus interest, and should satisfy said debt in full.

b) Additionally or in the alternative, to declare that Lazarenko formed an *ad hoc* general partnership with UESU, with a 50/50 split, and is, as a general partner, fully liable on the judgment against UESU, including the liability of his offshore corporate *alter egos*.

c) To declare the corporate veil of UESU disregarded for purposes of satisfying the judgment debt from the assets held for the benefit of Lazarenko through his nominees and trustees.

d) To declare that Lazarenko's nominee entities, including, but not limited to, Lady Lake, Dugsbery and Orby have no separate existence and are Lazarenko's *alter egos*, for purposes of satisfying the judgment debt, their assets to be applied towards the satisfaction of the judgment.

e) To declare that the title to the bearer shares of Lazarenko's entities, including, but not limited to, Lady Lake and Orby, wherever held, is vested in Judgment Creditor for purposes of satisfying the judgment debt and/or that those bearer shares be declared otherwise voided.

f) To undo and hold annulled all fraudulent transfers of UESU proceeds and assets, avoiding to satisfy the judgment debt, the latest of the fraudulent transfers on or about October 18, 2006, under any applicable law as to fraudulent transfers, including federal law and foreign law.

g) To order Lazarenko to disclose his offshore assets, to account for all proceeds from UESU, to execute the assignment of interest and his instruction to pay from the accounts outside of this District, in which he has interest, and/or controlled through Lady Lake, Orby and/or his trusts (including but not limited to Balford Trust and Iceman Trust), in the amounts sufficient to satisfy the judgment debt.

h) To order the Trustees for Lazarenko, however identified (including but not limited to those handling Balford Trust, Iceman Trust, and trustees Bonnant Wurzelel LLP), to pay for any judgment entered against Lazarenko or his shell entities, from the accounts held or controlled by them. Likewise, to order the banks that are under the U.S. jurisdiction and hold such assets, to satisfy the judgment from proceeds on their relevant accounts, wherever situated.

i) To allow post-judgment remedies to the full extent allowed by the law, including, but not limited to, imposition of constructive trust, writs of attachment, injunctive relief, deposits into Court, both in cash assets and in bearer shares as relevant here, appointing a federal receiver, as well as any necessary discovery.

j) To levy execution and any other available lien(s) on any and all assets of Dugsbery, including the real estate (at 100 Obertz Ln., Novato, CA) or its sale proceeds and any bank accounts for the benefit of Lazarenko, located within this District, towards satisfying the judgment debt.

k) To allow the statutory calculation of the interest on the judgment debt amount from the date of the judgment on July 7, 2005.

l) Attorneys' fees and such other relief, without limitation, towards collection on the judgment, as the Court deems just and proper.

The Present Verified Complaint is without prejudice to any and all other remedies available to Judgment Creditor, including remedies in any forfeiture proceedings wherever held.

Respectfully submitted,

Dated: July 29, 2008

ASPELIN & BRIDGMAN LLP

/s/

John H. Aspelin, Attorneys for Judgment Creditor
Universal Trading & Investment Co

1

## DEMAND OF JURY TRIAL

2

3   Judgment Creditor demands jury trial.

4

5

6   Dated: July 29, 2008                    ASPELIN & BRIDGMAN LLP

7

8   /s/ _____
    John H. Aspelin, Attorneys for Judgment Creditor
9   Universal Trading & Investment Co.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, Youry (George) A. Lambert, president and counsel of Judgment Creditor UTICo, state and depose under the penalty of perjury of the laws of the United States of America that I have read the foregoing Complaint and know the contents therefore.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 24, 2008

Dr. Youry A. Lambert, president
Universal Trading & Investment Co.

Verified Complaint for Collection on the Judgment Debt upon Registered Judgment

27

# Annex A

• AO 451 (Rev.12/93)   Certification of Judgment

# UNITED STATES DISTRICT COURT

DISTRICT OF     **MASSACHUSETTS**

**UNITED ENERGY SYSTEMS OF**
**UKRAINE, PFG**

V.

**UNIVERSAL TRADING &**
**INVESTMENT COMPANY**

**CERTIFICATION OF JUDGMENT**
**FOR REGISTRATION IN**
**ANOTHER DISTRICT**

Case Number:   **97 CV 12180 - EFH**

I,   **SARAH A. THORNTON**   Clerk of the United States district court certify that the

attached judgment is a true and correct copy of the original judgment entered in this action   **JULY 7, 2005** , as it

Date

appears in the records of this court, and that

**NO NOTICE OF APPEAL FROM THIS JUDGMENT HAS BEEN FILED, AND NO**
**MOTION OF ANY KIND LISTED IN RULE 4(a) OF THE FEDERAL RULES OF**
**APPELLATE PROCEDURE HAS BEEN FILED.**

**IN TESTIMONY WHEREOF,** I sign my name and affix the seal of this Court.

**FEBRUARY 16, 2006**
Date

SARA
Clerk

(By) Depu

*Insert the appropriate language: ..."no notice of appeal from this judgment has been filed, and no motion of any kind listed in Rule 4(a) of the Federal Rules of Appellate Procedure has been filed." ..."no notice of appeal from this judgment has been filed, and any motions of the kinds listed in Rule 4(a) of the Federal Rules of Appellate Procedure ( • ) have been disposed of, the latest order disposing of such a motion having been entered on [date]." ..."an appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on [date]. ..."an appeal was taken from this judgment and the appeal was dismissed by order entered on [date]."

(• Note: The motions listed in Rule 4(a), Fed. R. App. P., are motions: for judgment notwithstanding the verdict; to amend or make additional findings of fact; to alter or amend the judgment; for a new trial; and for an extension of time for filing a notice of appeal.)

DOCKETED     133



I hereby certify... foregoing d... ...cur... ...copy of the
☐ electronic ... ...al ... ...ional case
☐ electronically ...
☒ original filed in ... ...ts
...ara...
...lerk
...Court
By:
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED ENERGY SYSTEMS OF UKRAINE, PFG, a Ukrainian corporation | CIVIL ACTION: 97CV12180EFH |
| Defendant in Counterclaim | |
| vs. | (PROPOSED) JUDGMENT |
| UNIVERSAL TRADING & INVESTMENT COMPANY, a Massachusetts corporation | |
| Plaintiff in Counterclaim | [Fed.R.Civ.P. 55(b)(2)] |

On ...July 7..., 2005, the court considered application by Universal Trading & Investment Co., Inc., a Massachusetts corporation, for entry of default judgment against United Energy Systems of Ukraine, PFG, a Ukrainian corporation (hereinafter 'UESU'), under Rule 55(b)(2) of the Federal Rules of Civil Procedure.  After considering the papers submitted in connection with the application, the papers on file in this action and the authorities cited, the court finds as follows:

   1. A default was entered against UESU on February 22, 2005.

   2. UESU is not a minor, an incompetent person or a current member of the military service.  It is, or has been, a Ukrainian corporation that voluntarily submitted itself to the jurisdiction of this court by filing the underlying action with its claim that was subsequently dismissed.

   3. After having appeared in this action, UESU then abandoned the litigation.  UESU was given due notice of the motion for a default judgment, as required by Rule 55(b)(2) of the Federal Rules of Civil Procedure.  UESU was at fault in abandoning this civil action.

1

4.  Universal Trading & Investment Co. has established that UESU is liable to it for damages in the amount of $18,344,480.00.  UESU knew of the amounts of the counterclaims, elected not to oppose the counterclaims and is deemed therefore to have admitted them.

THEREFORE, IT IS SO ORDERED that:

1.  Default judgment is entered for Universal Trading & Investment Co., Inc. against United Energy Systems of Ukraine, PFG, in the amount of $18,344,480 and 00 cents.

2.  This judgment shall bear interest at the judgment rate from the date of entry until paid.

Date: 7-7-05

U.S. DISTRICT JUDGE

2