1
2
3
4
5
6
7
8                          IN THE UNITED STATES DISTRICT COURT
9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   UNIVERSAL TRADING AND                     No. C 08-03632 CRB
     INVESTMENT CO.,
12                                             **ORDER DENYING MOTIONS FOR**
                   Plaintiff,                  **RECONSIDERATION AND**
13                                             **SANCTIONS**
        v.
14
     DUGSBERY INC., et al.,
15
                   Defendants.
16   _____/
17
18         This Court dismissed with prejudice Universal Trading & Investment Company's

19   ("UTICo") judgment collection action against Pavlo Lazarenko and several companies

20   allegedly tied to and/or controlled by him (collectively, "Defendants") on January 7, 2011.

21   The Court held, among other things, that UTICo's judgment debt recovery claim was time-

22   barred because the judgment debtor (United Energy Systems of Ukraine ("UESU")) did not

23   have any non-time-barred claims that UTICo could assert against Defendants.  UTICo has

24   filed a motion for reconsideration claiming newly discovered evidence justifies amending the

25   judgment.  Defendants oppose that motion and have filed a motion for sanctions claiming

26   that the reconsideration motion is frivolous.

27         For the reasons set forth below, the Court DENIES both motions.[1]

28
     _____
              [1] The Court finds these matters appropriate for disposition without oral argument.  The hearing
     scheduled for April 15, 2011 is hereby VACATED.

**United States District Court**
For the Northern District of California

# I.     BACKGROUND

In 1997, UESU sued UTICo for libel in the District of Massachusetts.  UTICo counterclaimed alleging fraud.  UTICo obtained a default judgment against UESU for roughly $18 million.

In the summer of 2006, UTICo sought in this Court an order authorizing it to levy execution on its judgment on real property in Novato, CA because the property was allegedly purchased using money fraudulently conveyed from UESU.  Defendants filed a motion for summary judgment in the Novato case, arguing that UTICo's application for a levy was time-barred by C.C.P. § 3439.09(c)'s seven year limitation.  This Court agreed with Defendants' statute of limitations argument and granted summary judgment.  UTICo appealed, and the Ninth Circuit affirmed.

After losing at the district court level in the Novato case, UTICo filed the instant lawsuit, setting forth nine causes of action.  Defendants moved to dismiss.  This Court dismissed UTICo's conversion, unjust enrichment, civil conspiracy, and accounting claims with prejudice.  UTICo's fraud, alter ego and fraudulent conveyances claims were dismissed without prejudice.  Finally, the Court held that UTICo stated a claim for judgment debt recovery pursuant to C.C.P. § 708.210.  See Oct. 31, 2008 Order (Dkt. 30).

UTICo then filed its First Amended Complaint ("FAC").  Dkt. 51.  Defendants again moved to dismiss, and, on January 16, 2009, this Court dismissed UTICo's fraud and alter ego claims with prejudice and stayed proceedings pending resolution of the Ninth Circuit's review of the Novato appeal.  See Jan. 16, 2009 Order (Dkt. 76).

On November 10, 2009, the Ninth Circuit affirmed the grant of summary judgment in the Novato case because "[t]he fraudulent transfers relating to the California property allegedly occurred in 1996 and 1997, more than seven years before UTI[Co] filed its application to levy judgment . . . ."  Universal Trading and Investment Co. v. Lazarenko, 352 Fed. Appx. 210, 211 (9th Cir. 2009).

On August 13, 2010, this Court lifted the stay and returned this matter to active status.  Defendants again moved to dismiss, focusing on the two remaining substantive claims:  (1)

1   judgment debt recovery; and (2) fraudulent conveyances.  This Court granted the motion to

2   dismiss on January 7, 2011 and entered Judgment in favor of Defendants.  The order granting

3   the motion to dismiss was based on statute of limitations grounds.  Specifically, the Court

4   held that UTICo's judgment debt recovery and Uniform Fraudulent Conveyances Act claims

5   were timed barred.  Jan. 7, 2011 Order (dkt. 123).

6        Just less than one month after this Court's ruling, UTICo filed a motion for

7   reconsideration based on allegedly newly discovered evidence.  See Mot. for Reconsideration

8   (dkt. 125).  That evidence was a declaration from a Ukrainian law expert, Dr. Sergey A.

9   Belyaev.  Dr. Belyaev says that UESU does have viable, timely claims against Defendants

10  that UTICo could present.  In support of the motion for reconsideration, UTICo's counsel,

11  Jeffery Judd, said that, notwithstanding diligent effort, he had insufficient time before the

12  hearing on the motion to dismiss to find an expert on Ukrainian law and obtain a declaration.

13  Judd Decl. (dkt. 125-2) ¶¶ 6-7.  Mr. Judd was substituted in as counsel for UTICo relatively

14  late in these proceedings, which he says is largely responsible for his inability to find and

15  present the Ukrainian law expert's opinion to this Court before it ruled on the motion to

16  dismiss.  Id. ¶¶ 1-4.

17       After the motion for reconsideration was filed, counsel for Defendants, Doren

18  Weinberg, notified Mr. Judd that he (Mr. Weinberg) believed that Mr. Judd had filed

19  materially false statements in support of the reconsideration motion.  Judd Decl. (dkt. 130)

20  Ex. A (Feb. 15, 2011 Ltr. from Weinberg to Judd and Lambert).  Specifically, Mr. Weinberg

21  pointed out that UTICo and Mr. Judd's co-counsel in this case (George Lambert) have a

22  long-standing relationship with Dr. Belyaev.  Id.  Mr. Wienberg further asserted that there

23  was no way a diligent effort on Mr. Judd's part to locate a Ukrainian law expert could have

24  failed to discover Dr. Belyaev well in advance of the hearing on Defendants' motion to

25  dismiss.  Id.  Mr. Weinberg implied that, under the circumstances, it appeared that UTICo

26  and its counsel were aware of Dr. Belyaev, made a decision not to utilize him in opposing the

27  motion to dismiss, and attempted to deliberately mislead this Court in arguing in the

28  reconsideration motion that Dr. Belyaev (and his opinions) were newly discovered.  Id.  Mr.

1    Weinberg warned Mr. Judd that, if Mr. Judd did not withdraw the motion for reconsideration,

2    Defendants would oppose it and move for Rule 11 sanctions.  Id.

3         In response to Mr. Weinberg's warning and request to withdraw the reconsideration

4    motion, UTICo submitted two declarations to this Court on February 16, 2011.  Those

5    declarations were made by Messrs. Judd and Lambert.  See Lambert Decl. (dkt. 129); Judd

6    Decl. (dkt. 130).  Among other things, Mr. Lambert noted that:

7         •    It was agreed [when UTICo retained Mr. Judd] that Mr. Judd was
               to make all strategic and tactical decisions with respect to the
8              prosecution of this lawsuit, and that I would provide occasional
               research support and assistance with the massive factual record at
9              Mr. Judd's request.

10        •    Prior to January 14, 2011 [after the Court granted Defendants'
               motion to dismiss], Mr. Judd had not raised with me the issue of
11             the possibility of obtaining an expert opinion to support UTICo's
               Opposition to the Motion to Dismiss, and I was not aware of
12             independent efforts Mr. Judd had made in that regard.

13        •    [After Mr. Judd contacted me about obtaining an expert in
               Ukrainian law, I told him about Dr. Belyaev.]  I did not discuss
14             with Mr. Judd my long-standing professional relationship with
               Dr. Belyaev, his prior involvement with UTICo, or that he had
15             previously submitted expert declarations for UTICo in other
               litigation involving the same defendants.  I did not believe that
16             information was relevant to the issues that Dr. Belyaev was
               opining about in his declaration in support of UTICo's Motion
17             for Reconsideration [].

18   Lambert Decl. (dkt. 129) ¶¶ 3, 5, 10.

19        Mr. Judd's declaration noted, among other things, that:

20        •    As relatively new counsel for UTICo . . . I was not aware of Dr.
               Belyaev's long-time association with UTICo.  I did not "Google"
21             or otherwise research Dr. Belyaev's previous work as an expert
               witness due to the press of business and the limited resources
22             available to my practice.  Had I done so, I would have discovered
               Dr. Belyaev's long-time association with UTICo and ensured that
23             it was disclosed in his declaration submitted in support of
               UTICo's motion for reconsideration.  This was an inadvertent
24             omission, and not an attempt to deceive the Court.

25        •    I also realize, with the benefit of hindsight, that I could, and
               probably should have enlisted in my efforts to identify a
26             Ukrainian law expert UTICo's representative and co-counsel in
               this lawsuit, George Lambert.

27
          •    [Prior to the hearing on the motion to dismiss] I consciously
28             made the decision to abandon my efforts to research Ukrainian
               law and retain a Ukrainian law expert     . . . .

United States District Court
For the Northern District of California

- On January 17, 2011, Mr. Lambert first revealed Dr. Belyaev's identity to me. Satisfied that Dr. Belyaev's academic credentials and practial experience provided him sufficient foundation to serve as an expert with respect to Ukrainian law, and in reliance on Mr. Lambert's personal reference, I did not undertake further research into Dr. Belyaev's background. During my communications with Mr. Lambert, Dr. Belyaev's long-time association with UTICo did not come up.

Judd Decl. (dkt. 130) ¶¶ 6, 7, 9, 11.

## II.     LEGAL STANDARDS

### A.     A Rule 59(e) Motion

A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). Altering or amending a judgment is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003). Alternation or amendment of a judgment is appropriate if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. School Dist. No. 1J, Multnomah Cty., Or. v. ACand S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Where, as here, a party seeks to justify amendment of a judgment on the basis of newly discovered evidence, that party "must show that the evidence was discovered after the judgment, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court knew of it earlier, the outcome would likely have been different." Dixon v. Wallowa Cty., 336 F.3d 1013, 1022 (9th Cir. 2003). Motions to alter the judgment "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Carroll, 342 F.3d at 945.

### B.     Sanctions

Rule 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Rule 11(b), in turn, sets forth requirements for each document submitted to a court.

United States District Court
For the Northern District of California

1    Essentially, Rule 11 requires attorneys to conduct reasonable investigations into fact and law

2    before making arguments and/or factual assertions and not to file any document for an

3    improper purpose.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).

4          Sanctions can be ordered where a party files a frivolous motion.  Maisonville v. F2

5    Am., Inc., 902 F.2d 746, 748 (9th Cir. 1990).  A motion is frivolous if it is "baseless" or

6    "lacking in plausibility."  Id. at 749.  A motion is determined to be frivolous using an

7    objective standard, and a filing is frivolous if, when viewed from the perspective of a

8    competent attorney admitted to practice before the district court, it is unreasonable.  G.C. and

9    K.B. Investments, Inc. v. Wilson, 326 F.3d 1096 (9th Cir. 2003).

10   **III.    DISCUSSION**

11         **A.    The Motion For Reconsideration is Without Merit Because the "Newly**
           **Discovered Evidence" Could Have Been Discovered Had UTICo Exercised**
12         **Due Diligence**

13         As discussed above, the new evidence allegedly warranting an alteration of the

14   judgment is a declaration from a Ukrainian law expert opining that, under Ukrainian law,

15   UESU has viable, timely claims UTICo could assert.

16         Simply put, that evidence could have been discovered through the exercise of due

17   diligence.  The expert upon whom UTICo relies in support of its Motion for Reconsideration

18   was known to UTICo and one of UTICo's counsel of record in this case.  Indeed, Mr. Judd

19   has acknowledged that he "could, and probably should[,] have enlisted in my efforts to

20   identify a Ukrainian law expert UTICo's representative and co-counsel in this lawsuit,

21   George Lambert."  Judd Decl. (dkt. 130) ¶ 7.

22         UTICo argues that, notwithstanding the foregoing, it did exercise due diligence in

23   searching for a Ukrainian law expert but could not find one in sufficient time to present that

24   evidence before the Court ruled on Defendants' motion to dismiss.  In support of that

25   argument, Mr. Judd explains the efforts he undertook in advance of the hearing on

26   Defendants' motion and afterward.  See, e.g., id. ¶ 4 (summarizing efforts as including (1)

27   independently researching Ukrainian law and (2) making more than a dozen calls to people

28   in a position to know Ukrainian law experts).  But even assuming Mr. Judd's efforts would

be a legitimate <u>part</u> of a diligent investigation, they do not excuse the failure to consult with Mr. Lambert or UTICo itself.  Indeed, one would expect a lawyer new to a case and looking for an expert to <u>start</u> by consulting counsel more experienced with the matter and/or the client itself.

Accordingly, the Motion for Reconsideration is DENIED because the newly discovered evidence upon which the Motion is based could have been discovered had UTICo exercised due diligence.[2]

### B.    The Sanctions Motion is Denied Because The Motion Failed to Comply with Rule 11's Safe Harbor

Leaving aside the merits of Defendants' argument in support of their sanctions motion, Defendants failed to comply with the safe-harbor provisions in Rule 11(c)(2), so the motion must be denied.  Those provisions require a party seeking sanctions to first serve a copy of the sanctions motion on the opposing party but <u>not</u> file or present it to the Court.  Only if the allegedly offending filing is not cured after 21 days can the sanctions motion be filed with the Court.  Instead of following that procedure, Defendants wrote a letter to counsel for UTICo threatening to file a sanctions motion.  Defendants then served UTICo with the actual sanctions motion when it was filed with the Court.  Because the safe harbor requirements are mandatory, <u>Radcliffe v. Rainbow Construction Co.</u>, 254 F.3d 772, 788-89 (9th Cir. 2001);  <u>Winterrowd v. Am. Gen. Annuity Ins. Co.</u>, 556 F.3d 815  (9th Cir. 2009), Defendants sanctions Motion must be DENIED.

**IT IS SO ORDERED.**

Dated:  April 5, 2011

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[2] The Motion for reconsideration suffers from another infirmity as well.  The decision to argue for the application of Ukrainian law is a strategic one that UTICo could have made even before Mr. Judd was brought on as counsel.  Rule 59(e) is not a vehicle for undoing strategic decisions that, with the benefit of hindsight, have proven ill-advised.  Nor does the substitution of new counsel late in a proceeding allow a party to start over and make arguments that could have been made earlier.